## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **ANTHONY BRIAN HAWKINS,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ADAM F. GHIZ, et al.,**<br><br>**Defendants.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:18-cv-00466-DBB-JCB**<br><br>**District Judge David Barlow**<br><br>**Magistrate Judge Jared C. Bennett** |

This case was referred to Magistrate Judge Paul M. Warner under to 28 U.S.C. § 636(b)(1)(B).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is pro se Plaintiff Anthony Brian Hawkins's ("Mr. Hawkins") motion for leave to file an amended complaint ("Motion").[3] Based upon the analysis set forth below, the court recommends denying the Motion.

## PROCEDURAL BACKGROUND

On August 21, 2020, this court issued a Report and Recommendation to Judge Barlow which analyzed the claims in Mr. Hawkins's amended complaint and Mr. Hawkins's motion for leave to file a second amended complaint.[4] Based upon that analysis, this court recommended

---

[1] ECF No. 31.

[2] ECF No. 41.

[3] ECF No. 49.

[4] ECF No. 43.

that: (1) Mr. Hawkins's federal claims in this action be dismissed with prejudice under the authority of 28 U.S.C. § 1915(e)(2)(B)(ii); (2) Mr. Hawkins's state-law claims in this action be dismissed without prejudice; and (3) Mr. Hawkins's motion for leave to file a second amended complaint be denied.

On September 25, 2020, while the Report and Recommendation was pending before Judge Barlow, Mr. Hawkins filed the Motion, in which he again seeks permission to amend his complaint.[5]  In a November 19, 2020 order, Judge Barlow adopted the Report and Recommendation with modifications.[6]  Specifically, Judge Barlow dismissed Mr. Hawkins's federal claims and state-law claims without prejudice and ordered this court to issue a separate Report and Recommendation on the Motion.  The court issues the instant Report and Recommendation in accordance with Judge Barlow's order.

## FACTUAL BACKGROUND

On May 18, 2016, Mr. Hawkins was taking a walk in Riverton, Utah, when he began having a serious panic attack.  Because he knew that a hospital was nearby, he began walking toward the hospital.  At some point prior to his arrival at the hospital, "the Unified Police Department ("UPD") was contacted."

At or near the time Mr. Hawkins arrived at the hospital, UPD Officers also arrived.  Mr. Hawkins alleges that those UPD Officers were Officer Cottle, Officer Atkinson, and Officer

---

[5] ECF No. 49.

[6] ECF No. 52.

Thornton (collectively, "UPD Officers").  Mr. Hawkins entered the hospital to ask "about getting some medical attention."  He alleges that, at that point, he "was tackled from behind" by the UPD Officers.  Mr. Hawkins contends that his "head hit the ground which cause[d] [him] to lose consciousness."

When he regained consciousness, Mr. Hawkins was on a hospital room bed "with [his] hands cuffed behind [his] back."  The "first thing" Mr. Hawkins remembers was hearing "people yelling for [him] to stop trying to move" and having a taser pointed at him.  Mr. Hawkins "was confused and in fear for [his] life because [he] did not know what was going on" and no one in the room was communicating with him concerning the cause of the situation other than to tell him that he "was going to be tased if [he] kept trying to move."  Mr. Hawkins "could feel that [he] was being held down by multiple hands," but he was in a position where he "was unable to see what was going on."  Mr. Hawkins alleges that a UPD Officer, whom Mr. Hawkins does not identify, "had his hands on [Mr. Hawkins's] head pressing it down."  Whenever Mr. Hawkins tried to move, his "head would be pressed down with even more pressure."  The position Mr. Hawkins was in caused "alot [sic] of pain to [his] neck and back areas."

At some point, Mr. Hawkins "felt two needles being inserted into [his] body."  Mr. Hawkins alleges that "[u]pon information and belief," he was involuntarily given "antipsychotic medication."  Once that happened, Mr. Hawkins "started to struggle to see what was going on because [he] was scared."  He then "felt two more needles being inserted into [his] body."  Mr. Hawkins alleges that "[u]pon information and belief," he was involuntarily given another medication.  At that point, Mr. Hawkins "started to lose consciousness due to the medication"

3

and was "placed into 4-point restraints."  Mr. Hawkins alleges that "[u]pon information and belief," he "was left in 4-point restraints for approximately 4 hours."  "After the restraints were removed by medical personnel," Mr. Hawkins "was admitted to the ICU."  Mr. Hawkins alleges that Adam F. Ghiz ("Dr. Ghiz"), who is or was a doctor at the hospital, took some action to involuntarily commit Mr. Hawkins under Utah State law.  Mr. Hawkins contends that the UPD Officers "conspired with" and Dr. Ghiz in involuntarily administering the "antipsychotic mediation."

On May 19, 2016, while Mr. Hawkins "was in the ICU, under medication," the UPD Officers returned to the hospital, entered his hospital room, and asked him if he "was willing to talk to them concerning the surrounding events of the previous day."  Mr. Hawkins told them that he "was unwilling to talk to them" and asked them to leave.  Mr. Hawkins alleges that, at that point, the UPD Officers "demeanor changed," and they "came across more aggressively."  The UPD Officers discussed Mr. Hawkins "lab results" and indicated that they knew he "tested positive for drugs."  The UPD Officers left Mr. Hawkins's hospital room, "but continued to stand right outside of the room."

Eventually, the UPD Officers re-entered the room.  Mr. Hawkins asserts that Officer Cottle threatened to put Mr. Hawkins back into 4-point restraints and threatened Mr. Hawkins with a taser.  Because Mr. Hawkins was in "extreme fear of the violence that would occur" if he did not agree to be placed back in the restraints, he submitted "to being placed back into restraints without resisting."  Mr. Hawkins alleges that he "pleaded with" the UPD Officers concerning the fact that "the restraints were too tight" and "were causing [him] pain."  However, the UPD Officers left the room and did not return.

Mr. Hawkins contends that the foregoing events resulted in "physical and emotional injuries," including unidentified injuries to his neck and back, as well as "significant" "emotional injuries." Mr. Hawkins alleges that "to this day," he still struggles with "mental health issues directly from the overall situation that [he] went through."

Based upon those allegations, Mr. Hawkins's proposed amended complaint asserts claims under 42 U.S.C. § 1983, as well as various state-law claims. Mr. Hawkins names as defendants the UPD, the UPD Officers, Dr. Ghiz, and UPD Sheriff Rosie Rivera ("Sheriff Rivera").

## LEGAL STANDARDS

Mr. Hawkins's motion is governed by Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court should freely give leave" to amend pleadings "when justice so requires."[7] However, even under the liberal standard for amending pleadings, "the district court may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[8] "Thus, in evaluating a proposed amendment for futility, the court must apply the same standard it would apply in evaluating a [Fed. R. Civ. P.] 12(b)(6) motion to dismiss the proposed amended complaint."[9]

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[7] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[8] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotations and citation omitted)

[9] *Golden v. Mentor Capital, Inc.*, No. 2:15-CV-176-JNP-BCW, 2015 WL 13631247, at *1 (D. Utah Sept. 29, 2015) (citing *Bradley*, 379 F.3d at 901).

face.'"[10]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and indicates "more than a sheer possibility that a defendant has acted unlawfully."[11]  Facts "merely consistent with" liability or "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are insufficient.[12]  Under Rule 12(b)(6), the court assumes the truth of well-pleaded factual allegations and draws reasonable inferences in a light most favorable to the plaintiff.[13]

Additionally, Fed. R. Civ. P. 8 is incorporated into the court's Rule 12(b)(6) analysis.[14] Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[15]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16]  "Threadbare

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] *Id*.

[12] *Id*. (quotations and citations omitted); *see also Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011); *Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010).

[13] *Leverington*, 643 F.3d at 723.

[14] *U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1171 (10th Cir. 2010).

[15] Fed. R. Civ. P. 8(a)(2).

[16] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original) (citations omitted).

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]  Rule 8 requires, at least, that the allegations of a complaint put the defendant fairly on notice of the claims against him.[18]  The twin purposes of a complaint are to give the opposing party fair notice of the basis for the claims against him so that he may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief.[19]

In analyzing Mr. Hawkins's proposed amended complaint, the court is mindful that he is proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[20]  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[21] and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[22]  Indeed, as the Court of Appeals for the Tenth Circuit stated,

> [t]he broad reading of [a pro se] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . . [C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.  This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if

---

[17] *Id.*

[18] *Twombly*, 550 U.S. at 555.

[19] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.* 891 F.2d 1473, 1480 (10th Cir. 1989).

[20] *Bellmon*, 935 F.2d at 1110; *see also Ledbetter*, 318 F.3d at 1187.

[21] *Bellmon*, 935 F.2d at 1110.

[22] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

the court is to determine whether he makes out a claim on which
relief can be granted.  Moreover, in analyzing the sufficiency of the
plaintiff's complaint, the court need accept as true only the
plaintiff's well-pleaded factual contentions, not his conclusory
allegations.[23]

## ANALYSIS

In his proposed amended complaint, Mr. Hawkins asserts: (1) excessive force claims

under the Fourth Amendment; and (2) state-law claims for assault and battery, false

imprisonment, and intentional infliction of emotional distress.[24]  The court addresses Mr.

Hawkins's proposed claims in that order.  Based upon the following analysis, Mr. Hawkins's

proposed excessive force claims are futile because they are subject to dismissal and, therefore,

his proposed state-law claims are likewise futile because exercising supplemental jurisdiction

over them is not proper in the absence of any viable federal claims.  Accordingly, the court

recommends denying the Motion.

---

[23] *Bellmon*, 935 F.2d at 1110 (citations omitted).

[24] Mr. Hawkins makes a passing reference to a failure-to-train claim against Sheriff Rivera.
However, that claim is not included in the section of his proposed amended complaint devoted to
claims for relief.  Nevertheless, even if the court liberally construes Mr. Hawkins's proposed
amended complaint to allege such a claim, he does not include any factual allegations to support
it.  Thus, it is futile because it is subject to dismissal under Rule 8(a)(2) and Rule 12(b)(6).
Furthermore, as this court concluded in its prior Report and Recommendation, such a claim is
not properly asserted against Sheriff Rivera because no factual allegation implicates her for her
own actions in any of his asserted claims.  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010)
(providing that a failure-to-train claim is not properly alleged against "individual defendants in
their official capacities under § 1983" because such a claim "is essentially another way of
pleading an action against the county or municipality they represent").

## I.      Mr. Hawkins's Proposed Excessive Force Claims Are Futile.

"The Fourth Amendment protects individuals from 'unreasonable . . . seizures,' U.S. Const. amend. IV, and courts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished."[25]  "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'"[26]  "A seizure occurs when there is 'an intentional acquisition of physical control.'"[27]  For purposes of analyzing Mr. Hawkins's proposed Fourth Amendment excessive force claims, the court will assume that he has demonstrated that a seizure occurred.  Accordingly, the court turns to whether that seizure was unreasonable.  "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ."[28]

> Claims of excessive force are analyzed under the *objective* reasonableness standard of the Fourth Amendment. . . . The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the

---

[25] *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009).

[26] *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (quoting *Brower v. Cty. Of Inyo*, 489 U.S. 593, 599 (1989)).

[27] *Lemery v. Beckner*, 323 F. App'x 644, 649 (10th Cir. 2009) (quoting *Brower*, 489 U.S. at 596).

[28] *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted); *see also Woodford v. Robillard*, No. 2:11-CV-370 CW, 2013 WL 1403494, at *7 (D. Utah Apr. 5, 2013) ("The Tenth Circuit has held that all claims of excessive force during arrest or confinement before a defendant is formally charged or brought before a judicial officer are governed by the objective reasonableness standard of the Fourth Amendment.").

fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions.[29]

In his proposed claims for relief, Mr. Hawkins alleges that his Fourth Amendment rights were violated on May 18 and 19, 2016 when the UPD Officers used "force against [him] without need or provocation" and failed "to intervene to prevent this misuse of force."[30]  Those claims appear to be based upon the UPD Officers' use of physical force on May 18, 2016 and their use of 4-point restraints.  Mr. Hawkins generally alleges he experienced "physical and emotional injuries," including unidentified injuries to his neck and back; "significant" "emotional injuries"; and "mental health issues" that he struggles with "to this day."  His allegations of injury are insufficient to save his proposed amended complaint.

---

[29] *Lemery*, 323 F. App'x at 649-50 (quoting *Graham*, 490 U.S. at 396-97).

[30] Mr. Hawkins also alleges a claim that the UPD Officers violated his Fourth Amendment rights when they obtained his drug test results from the hospital.  That claim fails. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1016 (7th Cir. 2019) ("[W]e have identified no case law establishing that an officer's receipt of blood-test results from medical personnel offends the Fourth Amendment.").  Mr. Hawkins also asserts a claim, purportedly under the Fourth Amendment, that the UPD Officers and Dr. Ghiz conspired to forcibly inject Mr. Hawkins with "antipsychotic mediation."  To the extent that claim could be construed as either a claim against Dr. Ghiz under § 1983 or a conspiracy claim under § 1983, it fails.  Mr. Hawkins cannot assert a § 1983 claim against Dr. Ghiz because he is not a state actor. *Hunter v. Midland Mortg.*, No. CV-15-1266-R, 2015 WL 8207522, at *1 (W.D. Okla. Dec. 7, 2015) (providing that "§ 1983 creates a private cause of action when persons acting under color of state law violate a person's constitutional rights" and that "[a] private person is not liable under 42 U.S.C. § 1983").  It is true that the Tenth Circuit has recognized that, in some cases, a non-state actor can be held liable for civil rights violations under § 1983 if he or she conspired with a state actor in committing those violations. *See, e.g.*, *Crabtree v. Muchmore*, 904 F.2d 1475, 1480 (10th Cir. 1990).  However, in such cases, "mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Id.* at 1480-81 (quotations and citations omitted).  Here, Mr. Hawkins has included only sparse, conclusory allegations concerning any sort of conspiracy.

Emotional and mental injuries, without any attendant physical injuries, are generally insufficient to state a claim for excessive force.[31]  Thus, to the extent that Mr. Hawkins bases his proposed claims upon "emotional injuries" or "mental health issues," the claims must fail.

As to Mr. Hawkins's allegations of physical injury, Mr. Hawkins must allege an "actual injury that is not de minimis"[32] and is not the result of a de minimis use of force in order to state an excessive force claim.[33]  Here, Mr. Hawkins has not alleged a sufficient, actual injury. Instead, he makes general, conclusory allegations about unspecified injuries to his neck and back, which are inadequate bases for an excessive force claim.[34]  Furthermore, even under a

---

[31] *Jarrett v. Schubert*, No. 97-2628-GTV, 1998 WL 471992, at *4 (D. Kan. July 31, 1998) ("It is uncontroverted here that [the plaintiff] sustained no physical injuries but only mental anguish and emotional distress.  In rare circumstances, infliction of psychological harm, without a concomitant physical injury, may contravene the Fourth Amendment.  This case, however, does not present such a scenario.  [The defendant]'s striking and pushing of [the plaintiff] is not the type of malevolent touch that triggers a federal cause of action.  [The plaintiff]'s excessive force claim against [the defendant], therefore, must be dismissed." (footnote and citations omitted)).

[32] *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (concluding that the plaintiff's allegations that "left red marks that were visible for days afterward" was "insufficient, as a matter of law, to support an excessive force claim"); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (concluding that when a hospital report and photographs showed the plaintiff's arms and wrists had "superficial abrasions" as a result of handcuffs, the "injuries were de minimis" and did not support an excessive force claim); *see also Brewer v. Ross*, No. 1:15-CV-87-TC, 2018 WL 3128998, at *6 (D. Utah June 26, 2018).

[33] *Thomas v. Vaughn*, No. 2:93-CV-925 PGC, 2006 WL 2375657, at *11 (D. Utah Aug. 11, 2006) ("[W]hile minor injuries do not preclude an action for unreasonable force [under the Fourth Amendment], *de minimis* uses of physical force ordinarily do not rise to the level of a constitutional violation.").

[34] *Salazar v. Castillo*, No. 12-CV-01481-JLK, 2013 WL 69154, at *3 (D. Colo. Jan. 7, 2013) (concluding that the plaintiff's "unspecified injury" and "conclusory allegations" were "not sufficient to state a plausible Fourth Amendment claim based upon a theory of excessive force" (emphasis omitted)).

generous reading of Mr. Hawkins's allegations, the court concludes that the UPD Officers used, at most, de minimis force in their interactions with Mr. Hawkins.

With respect to Mr. Hawkins's reliance on the use of 4-point restraints to support his proposed claims, his failure to identify or allege any specific or sufficient injury is again detrimental to his claims.  As noted in this court's previous Report and Recommendation, the court was unable to find any cases addressing the use of 4-point restraints in the context of a Fourth Amendment excessive force claim.  However, the court concluded that cases involving handcuffing provide sufficient analogues to the instant case.  Again, to succeed on a Fourth Amendment claim of excessive force involving handcuffing, "a plaintiff must show 'some actual injury that is not de minimis, be it physical or emotional.'"[35]  "Unduly tight handcuffs can, in some cases, amount to excessive force.  But a plaintiff still must make a showing that the handcuffs caused some actual injury that is not de minimis before we can find a constitutional violation."[36]  Although Mr. Hawkins alleges that the "the restraints were too tight" and "were causing [him] pain," nowhere in his proposed amended complaint does he allege that he suffered any specific physical injuries as a result of the restraints.[37]  For those reasons, Mr. Hawkins's proposed excessive force claims are futile because they are subject to dismissal.

---

[35] *Koch*, 660 F.3d at 1247 (quoting *Cortez*, 478 F.3d at 1129).

[36] *Scott v. City of Albuquerque*, 711 F. App'x 871, 881 (10th Cir. 2017) (quotations and citations omitted).

[37] Mr. Hawkins also asserts a one-sentence claim that his First Amendment rights were somehow violated through the use of the 4-point restraints.  Because it is not developed in any meaningful way or supported by any well-pleaded factual allegations, that claim fails under Rule 8(a)(2) and Rule 12(b)(6).

**II.     Mr. Hawkins's Proposed State-Law Claims Are Futile Because Exercising Exercise Supplemental Jurisdiction Over Them Is Not Proper Here.**

"Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction."[38]  However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.  When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[39]

For the reasons set forth above, Mr. Hawkins's proposed federal claims are futile because they would be subject to dismissal.  In the absence of any viable federal claims, Mr. Hawkins's proposed state-law claims are likewise futile because it is not proper for the court to exercise supplemental jurisdiction over them.[40]

<u>CONCLUSION AND RECOMMENDATION</u>

Based upon the foregoing, IT IS HEREBY RECOMMENDED that the Motion[41] be DENIED.  Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties

---

[38] *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012).

[39] *Koch*, 660 F.3d at 1248 (quotations and citations omitted).

[40] *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

[41] ECF No. 49.

must file any objection to this Report and Recommendation within 14 days after being served

with a copy of it.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to object may constitute

waiver of objections upon subsequent review.

       DATED February 25, 2021.

               BY THE COURT:

               JARED C. BENNETT
               United States Magistrate Judge